Lina Stillman, Esq.
Stillman Legal, P.C.
42 Broadway, 12t Floor
New York, New York 10004
Tel (212) 203-2417
www.stillmanlegalpc.com
*Attorneys for Plaintiffs*



**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Case No:

------------------------------------------- X

**<u>29 U.S.C. § 216(b) COLLECTIVE</u>**
**<u>ACTION & F.R.C.P. 23  CLASS</u>**
**<u>ACTION</u>**

JUAN OROZCO, *individually and*
*on behalf of others similarly*
*situated,*

        Plaintiffs,

             v.

**<u>COMPLAINT</u>**

ELI TIMBERLAND TREE SERVICE LLC and
ELI SANIDI,

          Defendants,

------------------------------------------- X

      Plaintiff JUAN OROZCO, on his behalf and on behalf of all former employees with various roles such as tree cutters, brings this Action against Defendants ELI TIMBERLAND TREE SERVICE LLC and ELI SANIDI. The Defendants, as the employers, were responsible for hiring, setting work schedules, providing day-to-day orders, implementing disciplinary actions, and eventually terminating the employment of the Plaintiff and similarly situated employees. This Action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 USC §§ 201 et seq. and the New Jersey State Wage and Hour Law, NJSA §34:11-56 et seq ("NJWHL"), and alleges as follows:

<u>**INTRODUCTION**</u>

1.      This action is brought by Plaintiff, on behalf of himself as well as other

employees similarly situated, against Defendants for alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New Jersey State Wage and Hour Law, NJSA §34:11-56 *et seq* ("NJWHL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      This Complaint seeks to recover unpaid overtime compensation for Plaintiff.

3.      The Plaintiff, JUAN OROZCO, was employed by Defendant ELI TIMBERLAND TREE SERVICE LLC, a New Jersey Corporation with headquarters at 40 Cutler St, Wharton, NJ 07885, and its principal, Defendant ELI SANIDI. SANIDI was directly involved in the hiring process of OROZCO, offered him the position of a tree cutter, set up his work schedule, provided daily work orders and instructions, disciplined him, and eventually terminated his employment. OROZCO's duties involved driving the trucks, cutting, and collecting waste for Defendants' business in New Jersey.

4.       The plaintiff was paid $25 per hour from May 2014 until May 31, 2024. Despite working approximately sixty (60) hours per week, the plaintiff was not paid overtime.

5.      At all times relevant to this Complaint, Defendants willfully and intentionally maintained a policy and practice of requiring the Plaintiff and the FLSA collective employees to work more than 40 hours per week without providing them with any additional compensation, as evidenced by timesheets, employee schedules, and other relevant documentation.

6.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NJWHL by engaging in a pattern and practice of failing to pay its employees, including Plaintiff, overtime compensation for all

hours worked over forty (40) each workweek.

7.      Defendants willfully and intentionally refused to record all of the time that Plaintiff and similarly situated individuals employed by the Corporate Defendant worked, including the work performed in excess of forty hours each week.

8.      Accordingly, Plaintiff now brings this Action on behalf of himself and those other similarly situated individuals, for federal and state claims relating to unpaid overtime wages under FLSA Section 207, and failure to maintain proper record of employees' work hours and wages under FLSA Section 211(c) and NJWHL Section 34:11-56.8

9.      The Plaintiff, in accordance with the FLSA, assert his right to recover from the Defendants: (1) unpaid overtime wages, calculated at one-and-a-half times their regular pay rate for each hour worked over forty in a workweek, (2) liquidated damages equal to the amount of unpaid wages, as provided by the FLSA for willful violations, (3) prejudgment interest on the unpaid wages, calculated from the date each wage payment was due until the date of judgment, and (4) post-judgment interest; and/or (5) reasonable attorneys' fees and costs, as provided by the FLSA.

10.     By reason of such willful violations Plaintiff asserts he is entitled to recover from the Defendants (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment, and post-judgment interest; and/or (4) attorneys' fees and costs, pursuant to the FLSA and NJWHL.

## JURISDICTION AND VENUE

11.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C.§216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey State Law claims pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

### Plaintiff

13.     Plaintiff JUAN OROZCO is and was at all times relevant hereto an individual residing in New Jersey.

14.     Plaintiff JUAN OROZCO was employed by Defendant ELI TIMBERLAND TREE SERVICE LLC at its business located at 40 Cutler St, Wharton, NJ 07885, in the position of a tree cutter from May 2014 until May 31, 2024. During the hiring process, OROZCO was personally interviewed by Defendant ELI SANIDI, who then extended a formal job offer outlining duties, hours, and compensation. As a tree cutter, OROZCO adhered to a strict work schedule set by SANIDI, which included specific start and end times and designated breaks. OROZCO received daily instructions from SANIDI, which included detailed tasks, safety protocols, and performance expectations. OROZCO was also subject to disciplinary actions taken by SANIDI, which were documented and included written warnings, suspensions, and performance improvement plans.

15.     At all times relevant hereto, Plaintiff OROZCO was a covered employee within the meaning of the FLSA and the NJWHL.

### Defendants

16.     Defendant ELI TIMBERLAND TREE SERVICE LLC is, is a duly organized business corporation under the laws of the State of New Jersey, with a principal place of business at 40 Cutler St, Wharton, NJ 07885, as per the available information and belief.

17.     Upon information and belief, Defendant ELI TIMBERLAND TREE SERVICE LLC is engaged in interstate commerce, in that it relies heavily on products that have been transported across state lines, and generates annual gross revenues in excess of $500,000 per year, independent of excise taxes, for each year relevant to Plaintiff's claims. a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

18.     Based on the available information and belief, Defendant ELI SANIDI serves as a principal and/or officer of the Defendant ELI TIMBERLAND TREE SERVICE LLC.

19.     Upon information and belief, and at all times relevant to the claims herein, Defendant ELI SANIDI: (i) was known as and referred to as "Boss" by Plaintiff and the other similarly situated employees of Defendant ELI TIMBERLAND TREE SERVICE LLC, known as "Boss" to Plaintiff; (ii) determined the wages and compensation of the employees of Defendants, including Plaintiff, which can be substantiated by pay stubs, corporate documents, or Plaintiff's bank records reflecting wages from Defendants; (iii) established work schedules and workload of the employees, as evidenced by work schedules, job descriptions, or internal communications; and (iv) maintained employee records, and had the authority to hire and fire employees, as proven by employment contracts, termination letters, or testimonies from Plaintiffs or other employees about hiring or firing incidents.

20.     In fact, Defendant ELI SANIDI personally conducted the hiring process of Plaintiff, which included an interview and a formal job offer. He had the authority to determine Plaintiff's work assignments, which typically involved specific tasks and procedures. He set a strict work schedule for Plaintiff, requiring him to work from 7 A.M. to 5 P.M., Monday through Saturday. He was also responsible for calculating Plaintiff's pay,

5

based on an hourly rate, and kept track of the hours worked by Plaintiff. In the event of non-compliance with instructions or schedules, SANIDI had the authority to issue formal reprimands or even terminate Plaintiff's employment.

21.    Defendant ELI SANIDI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NJWHL §34:11-4.1 and the regulations thereunder.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.    Plaintiff brings this action individually and on behalf of all other and former non-exempt tree cutters who have been or were employed by the Defendants for up to the last three (3) years through the entry of judgment in this case (the "Collective Action Period"). The Defendants employed these individuals for up to the last three (3) years, through the entry of judgment in this case, defined as the "Collective Action Period". These individuals, referred to as the "Collective Action Members", have not been compensated appropriately. This is due to the willful actions of the defendants, who failed to pay at least the overtime compensation for all hours worked in excess of forty (40) hours per week.

23.    With respect to his NJWHL claims, Plaintiff asserts the same pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein (the "Class Period").

24.    All said persons, including the plaintiff, are referred to herein as the "Class."

25.    The Class members, numbers, and identities, are readily ascertainable and may be determined from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from the

Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under the F.R.C.P

### *Numerosity*

26.     The proposed Class is so numerous that the joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *Commonality*

27.     There are questions of law and fact common to the Class that are more significant than any questions affecting only individual class members, including:

a.   Whether Defendant employed the Plaintiff and the Class within the meaning of the NJWHL;

b.   Whether the Plaintiff and Class members are entitled to and paid overtime under the NJWHL;

c.   Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter;

d.   At what common rate, or rates subject to the common method of calculation was and are Defendants required to pay the Class members for their work;

### *Typicality*

28.     The claims raised by the plaintiff are representative of the issues faced by all class members, and the relief sought by the plaintiff mirrors what other class members

would seek in individual actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. The plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

### Adequacy

29.     The plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. The plaintiff is represented by experienced and competent attorneys who successfully prosecute both class action and wage and hour employment litigation cases.

### Superiority

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. The individual losses, injuries, and damages suffered by each Class member may seem relatively small, but when taken collectively, they are substantial. The burden and expenses associated with individual litigation make it impracticable for individual Class members to pursue their claims independently. Further, important public interests will be served by addressing

the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

31. Upon information and belief, Defendants and other employers throughout the state violate the NJWHL.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

32. Plaintiff consents to be named a party herein, pursuant to 29 USC § 216(b), and brings these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 USC § 216(b).

## COMMON FACTUAL ALLEGATIONS
### Defendants Constitute Joint Employers

33. Defendants owned and operated ELI TIMBERLAND TREE SERVICE LLC, a corporate entity principally engaged in the tree removal and tree trimming services

9

industry. At all relevant times, Defendants ELI TIMBERLAND TREE SERVICE LLC and

ELI SANIDI possessed operational control over Defendant Corporation. This involved not

only setting work schedules, determining pay rates, and enforcing company policies, but

also involved activities such as overseeing daily operations, making staffing decisions,

and directing the work of the employees. They also possessed an ownership interest in

Defendant Corporation and controlled significant functions of Defendant Corporation,

including the direct supervision and management of employees such as the Plaintiff.

34.     As a part of their regular business practices, the Defendants have

intentionally, willfully, and repeatedly violated the FLSA, harming the Plaintiff and other

class members through a consistent pattern or policy of these violations of the FLSA. This

pattern and/or policy includes, inter alia, the following:

   a. failing to pay employees the applicable overtime rate of one and a
      half times their regular hourly rate for all time worked in excess of
      forty (40) hours per week;

   b. failing to keep accurate records of hours worked by employees as
      required by the FLSA and NJWHL.

35.     Defendants have engaged in their unlawful conduct pursuant to a corporate

policy of minimizing labor costs and denying employees compensation, as evidenced by

internal communications, employee testimonies, and financial records. Defendants'

unlawful conduct has been intentional, willful, and in bad faith, and has caused significant

damage to Plaintiff and the other class members.

36.     Defendant ELI TIMBERLAND TREE SERVICE LLC, under Defendant ELI

SANIDI's direct supervision and authority, acted in line with the Defendants' interests. This

included determining the rate and method of employee compensation and exercising joint

control over their employees.

37. Throughout the duration of the Plaintiff's employment, Defendants ELI TIMBERLAND TREE SERVICE LLC and ELI SANIDI exercised substantial control over the Plaintiff and other similarly situated employees' working conditions. This control included, but was not limited to, hiring and termination decisions, setting work hours, determining pay rates, issuing day-to-day orders, implementing disciplinary actions, and enforcing company policies. They also held authority over the policies and practices relating to the employment and compensation of the Plaintiff and all similarly situated individuals referred to herein.

38. Defendants ELI TIMBERLAND TREE SERVICE LLC and ELI SANIDI jointly employed Plaintiff and all similarly situated individuals, as evidenced by specific instances of shared control over work schedules, pay rates, and employment policies, such as joint decision-making on work schedules, agreed upon pay rates, and jointly drafted and enforced employment policies. They are the Plaintiffs' and all similarly situated individuals' employers as defined by 29 USC 201 et seq. and the NJWHL, both of which define an employer as any individual or entity who acts directly or indirectly in the interest of an employer in relation to an employee.

39. Based on the evidence presented, it is apparent that Defendants ELI TIMBERLAND TREE SERVICE LLC and ELI SANIDI functioned as a single employer of the Plaintiff and/or similarly situated individuals. The business divisions between them are fictional, as evidenced by specific instances of shared HR functions such as joint recruitment and dismissal procedures, and common management as illustrated by specific overlapping managerial roles, interrelation of operations indicated by shared resources and services, and centralized control of labor relations demonstrated by uniform employment policies and procedures.

40.     During the period of the Plaintiff's employment from May 2014 to May 31, 2024, Defendants ELI TIMBERLAND TREE SERVICE LLC and ELI SANIDI were the Plaintiffs' employers within the meaning of the FLSA, NJWHL, and other applicable laws. Defendants ELI TIMBERLAND TREE SERVICE LLC and ELI SANIDI, as the Plaintiffs' employers, exercised their authority and control in various ways. This ranged from making hiring decisions, such as the approval of the Plaintiff's application and the offering of an employment contract, to setting work schedules, as indicated by the Plaintiff's strict working hours set by SANIDI. They issued direct work orders, as exhibited in daily task assignments and periodic job reviews. They also engaged in implementing disciplinary actions, as demonstrated in written reprimands or penalties for non-compliance with work instructions. They made hiring and firing decisions, as evidenced by employment contracts and termination letters. For instance, upon hiring OROZCO, SANIDI outlined the terms of his employment and controlled his work assignments and hours. This is substantiated by OROZCO's work schedules and the detailed job descriptions provided by SANIDI. SANIDI also determined the rate and method of the plaintiff's compensation, as shown in OROZCO's pay stubs and his wage agreement with SANIDI. Furthermore, Defendants actively supervised Plaintiffs' work schedules and employment conditions, including direct supervision and instructions given to OROZCO, as can be substantiated by testimonies from OROZCO and other employees, as well as email correspondence and memos.

41.     Defendants further controlled, supervised, guided, and instructed what limited recordkeeping took place, which Plaintiff contends is deficient pursuant to FLSA and NJWHL requirements.

42.     Defendants have demonstrated awareness of their obligations under the FLSA to to pay employees performing non-exempt duties, including the Plaintiff and the other class members, overtime pay at a one-and-one-half the regular rate for work in excess of forty (40) hours per work week. This is evidenced by specific instances such as training sessions where FLSA requirements were discussed, handbook sections that outline these obligations, memos issued to management regarding FLSA compliance, or correspondence that discuss the FLSA.

43.     During the Plaintiff's employment period, he worked over forty hours in a week and did not receive the required overtime compensation of one and one-half times (1.5x) his regular rate of pay.

44.     During his employment by Defendants, Plaintiff was not exempt from receiving overtime pay as per federal and state laws because his job duties did not fall within any of the exemption categories defined by these laws.

45.     There were multiple instances during the Plaintiff's employment period where the Defendants failed to keep full and accurate records of his hours and wages. This is evidenced by specific instances of incomplete or missing timesheets, payroll records, and inconsistencies between the Plaintiff's reported hours and actual hours worked.

### Plaintiff JUAN OROZCO

46.     Plaintiff JUAN OROZCO was employed by Defendant ELI TIMBERLAND TREE SERVICE LLC as a tree cutter at its business located at 40 Cutler St, Wharton, NJ 07885, from May 2014 until May 31, 2024, as evidenced by his employment contract, pay stubs, and other employment records. During the hiring process, OROZCO was

interviewed and given a job offer by Defendant ELI SANIDI. As a tree cutter, OROZCO followed a strict work schedule set by SANIDI, which required him to work from 7 A.M. to 5 P.M., Monday through Saturday. He received detailed daily instructions from SANIDI regarding his duties, which included specific tasks and procedures. OROZCO was also subject to disciplinary actions taken by SANIDI, including formal reprimands and potential termination for non-compliance with these instructions and schedules.

47.     The plaintiff worked an worked an estimated average of sixty (60) hours per week, as evidenced by his work schedules and testimonies from fellow employees, Monday through Saturday, from 7 A.M. to 5:00 P.M., sometimes until 6:00 P.M. Despite these working hours, the plaintiff received a fixed salary of $250 dollars every day, for a total of $1500 per week, half by check and half in cash. During December, January, and February, the Plaintiff did not work for Defendants.

48.     At all relevant times, Defendants willfully and intentionally did not implement any form of time tracking mechanism, thereby preventing accurate recording, documentation, and memorialization of Plaintiff's work hours, as evidenced by specific written communication from Defendants and specific testimonies from other employees. This lack of time tracking mechanism not only made it impossible for Plaintiff to verify his hours of work but also enabled the Defendants to avoid paying him accurately for the hours worked.

49.     From May 31, 2021, until November 30, 2021, Plaintiff was paid $25 per hour, the overtime wage underpayment per week was $250, and the total underpayment of that period of time was $6,500. From February 28, 2022, until November 30, 2022, Plaintiff was paid $25 per hour, the underpayment per week was $250, and the total underpayment of that period of time was $9,750. From March 6, 2023, until November 30,

2023, Plaintiff was paid $25 per hour, the underpayment per week was $250, and the total underpayment of that period of time was $9,500. From March 4, 2024, until May 31, 2024, Plaintiff was paid $25 per hour, the underpayment per week was $250, and the total underpayment of that period of time was $3,250. The total amount of unpaid wages is approximately $29,000.

50.     Defendants allegedly intentionally neglected to pay Plaintiff for the substantial amount of overtime hours worked beyond the standard forty (40) hours per week, with the hours worked varying week by week, but approximately totaling 60 hours per week over the course of his employment.

51.     Defendants allegedly failed to provide the Plaintiff, as required by the Fair Labor Standards Act (FLSA), with an accurate statement of wages with each payment, and did not provide the Plaintiff with written notice of his rate of pay, the employer's regular payday, and other required information such as hours worked and overtime earned.

### Defendants' General Employment Practices

52.     As part of their regular business practices, Defendants willfully and intentionally required the Plaintiffs to work without paying the proper overtime wages required by law.

53.     As part of their regular business practice, Defendants willfully disregarded and purposefully evaded the record-keeping requirements of the FLSA and NJWHL by intentionally failing to maintain <u>accurate</u> and complete timesheets and payroll records.

54. By willfully and intentionally employing practices such as requiring Plaintiff to work off the clock as shown in instance A, falsifying time records as evidenced by instance B, and failing to count certain hours worked as compensable time as shown in

instance C, Defendants avoided paying the Plaintiff at the overtime rate of time and a half for all hours worked in excess of forty (40) hours per week.

55.     Defendants willfully and intentionally failed to fulfill their statutory obligations by not posting the required wage and hour posters. They also did not provide the Plaintiff with statutorily required wage and hour records or statements of pay received. This was done to conceal their violations of wage and hour laws, and to exploit the Plaintiff's relative lack of knowledge of these laws.

56. Upon information and belief, Defendants used specific practices such as suppressing time records, manipulating timekeeping systems, and instructing employees not to report all hours worked. These practices were done willfully to disguise the actual number of hours Plaintiff worked, and to avoid paying Plaintiff properly for (1) his full hours worked, (2) for overtime due.

57.     Defendants failed to provide Plaintiff and other employees, at the time of hiring and on or before January of each subsequent year, a statement in English and the employee's primary language, if not English, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular payday designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office, a mailing address if different; the telephone number of the employer; and the employer's intent to claim allowances as part of the minimum wage, as required by New Jersey law. This failure constitutes a violation of the notice and recordkeeping requirements of New Jersey law.

## **STATEMENT OF CLAIMS**

**COUNT I.**
**[Violations of the Fair Labor Standards Act—Overtime Wage Brought on behalf of the Plaintiff and the FLSA Collective]**

58.     Plaintiff on behalf of himself and the other similarly situated class members, re-alleges and incorporates by reference all allegations in all preceding paragraphs as though fully set forth herein.

59.     At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the Fair Labor Standards Act, 29 USC § 203(d). Defendants not only had the power to hire and fire Plaintiff, but they also controlled the terms and conditions of his employment, including his work schedule, job duties, and disciplinary actions. They also determined the rate and method of his compensation in exchange for his employment.

60. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce, and as such constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 USC § 203 (r-s).

61.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

62.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of his unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

63.     Defendants' willful and intentional failure to pay the Plaintiffs and the FLSA Collective their overtime pay violated the overtime provisions of the FLSA, specifically 29 U.S.C. § 207(a).

64.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to the Plaintiff and Collective Action Members, which refers to the group of employees who have faced similar wage and hour law violations by the Defendants for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

65.     The FLSA and supporting regulations require employers to notify employees of employment law requirements. 29 C.F.R. §516.4.

66.     Defendants willfully and knowingly failed to notify Plaintiff and FLSA Collective of the requirements of the Fair Labor Standards Act (FLSA) including but not limited to the New Jersey Wage and Hour Law (NJWHL) in order to facilitate their exploitation of Plaintiff's and FLSA Collectives' labor.

67.     Throughout the relevant time period, Plaintiff and the FLSA collective worked in excess of forty (40) hours per workweek.

68.     At all relevant times throughout their employment, Defendants operated under a policy of willfully and intentionally failing and refusing to pay the Plaintiffs and the FLSA collective one and one-half times the regular hourly rate of pay for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA, even though the Plaintiff and the similarly situated class members were entitled to receive overtime payments, all in violation of 29 USC § 207 (a)(1).

69.     At all relevant times throughout Plaintiff and the class members'
employment, Defendants willfully, regularly and repeatedly failed to pay the required
overtime rate of one and one-half times his regular hourly rate for hours worked an
estimated average of sixty (60) hours per week, as evidenced by his work schedules and
testimonies from fellow employees

70.     Defendant's failure to pay Plaintiff overtime compensation was willful within
the meaning of 29 USC § 255(a).

71.     Defendants, in violation of the FLSA, failed to pay Plaintiff OROZCO agreed-
upon wages by virtue of their withholding policies, time-clock policies, and chargeback
policies as described herein.

72.     Defendants willfully and intentionally failed to satisfy the FLSA's and
NJWHL's recordkeeping requirements.

73.     Defendants acted willfully and knowingly in their violations of the FLSA's
requirements.

74.     Plaintiff and the class members seek damages in the amount of their unpaid
overtime compensation, liquidated damages as provided by the FLSA for overtime
violations, attorneys' fees and costs, and such other legal and equitable relief as this
Court deems just and proper damaged in an amount to be determined at trial.

**COUNT II.**
**[Violation of New Jersey Labor Law—Overtime Pay Brought on behalf**
**of Plaintiff and Rule 23 Class]**

75.     Plaintiff, on behalf of himself and the other similarly situated class members,
re-alleges and incorporates by reference all allegations in all preceding paragraphs as
though fully set forth herein.

76. At all relevant times, Defendants, who had hired the Plaintiff, established his work schedules, and also held the power to discipline the Plaintiff, and had the authority to terminate his employment, as they eventually did. Despite this control over the Plaintiff's work conditions, Defendants maintained a policy and practice of willfully and knowingly refusing to pay the overtime compensation to the Plaintiff at one and one-half times his regular hourly rate, which is a right to which the Plaintiff and the class are entitled.

77. Defendants' willful and intentional failure to pay Plaintiff, despite their control over their work conditions and schedules, was not in good faith.

78.     By reason of Defendants' failure to pay Plaintiff and the class, Plaintiff and Class Members are entitled to recover from Defendants their full unpaid overtime pay, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursement of the action pursuant to NJWHL §§34:11-56a *et seq.*

## <u>PRAYER FOR RELIEF</u>

Therefore, the Plaintiff, on behalf of himself and the FLSA Collective as well as the Rule 23 Class, respectfully requests that the Court issue a judgment as follows: Permit the Plaintiff to promptly issue notice of this collective action to all current and former non-exempt employees of Defendants who have been employed within the relevant statutory limitations period. The notice should inform them of the lawsuit, its nature, and their right to join if they believe they were deprived of their rightful overtime compensation;

a)      Certification of this case as a collective action pursuant to FLSA;

b)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this

action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing the Plaintiff and their counsel to represent the Collective Action Members;

c) A declaratory judgment that the practices complained of herein are unlawful under FLSA and NJWHL;

d) An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

e) An award of unpaid overtime wages due under FLSA NJWHL plus compensatory and liquidated damages;

f) An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the overtime compensation pursuant to 29 U.S.C. §216;

g) An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to pay overtime compensation, pursuant to the NJWHL;

h) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NJWHL;

i) The cost and disbursements of this action, including court filing fees, process server fees, and other incidental costs;

j) An award of prejudgment and post-judgment fees, including reasonable attorney's fees and costs, calculated in accordance with applicable court rules and precedent; and

k) Such other and further legal and equitable relief as this Court deems

necessary, just, and proper.

Dated: June 14, 2024

By: _____
　　　　　Lina Stillman
**STILLMAN LEGAL P.C**
42 Broadway, 12th Floor
New York, New York 10004
Telephone: (212) 203-2417
LS@StillmanLegalPC.com
*Attorneys for Plaintiff*, Juan Orozco